Gregory **PERNOUD, D.D.S.,**
Respondent/Cross–
Appellant,

v.

Philip **MARTIN, M.D.,** Appellant/Cross–
Respondent,

v.

**JEFFERSON MEMORIAL HOSPITAL,**
Respondent.

No. 64623.

Missouri Court of Appeals,
Eastern District,
Division Four.

Jan. 24, 1995.

Paul B. Lee, Holtkamp, Liese, Beckemeier & Childress, P.C., St. Louis, Joel D. Monson,

Anderson & Gilbert, Clayton, for respondent Pernoud.

Kenneth C. Brostron, Lashly & Baer, St. Louis, for respondent Jefferson Mem. Hosp.

Gordon L. Ankey, T. Evan Schaeffer, Martin B. Sipple, Thompson & Mitchell, St. Louis, for appellant Martin.

SIMON, Judge.

Defendant Philip Martin, M.D., appeals from a judgment partially in his favor in his malicious prosecution counterclaim against plaintiff Gregory Pernoud, D.D.S., who brought the underlying action for libel and slander against defendant which the trial court dismissed pursuant to defendant's summary judgment motion. Plaintiff cross-appeals from the judgment in defendant's favor in defendant's counterclaim. Defendant also appeals from the granting of Jefferson Memorial Hospital's (Hospital) motion for summary judgment in his third-party petition against Hospital for breach of contract and failure to defend and indemnify pursuant to Hospital's Bylaws (Bylaws), and the granting of Hospital's motion for directed verdict in his petition against it for malicious prosecution.

On appeal, defendant claims the trial court erred in: (1) refusing to give his proposed instruction on punitive damages because he adduced evidence that plaintiff acted with legal malice in that he filed the libel and slander suit to silence defendant's criticisms during the Hospital's peer review process; (2) entering a directed verdict against him as to Count III of his third-party petition because he adduced evidence that Hospital assisted and encouraged plaintiff in prosecuting the unfounded libel and slander action; and (3) entering summary judgment against him as to Counts I and II of his third-party petition because the Bylaws create a contractual agreement by Hospital to defend and indemnify him against the libel and slander action.

In his cross-appeal, plaintiff contends the trial court erred in: (1) admitting evidence that plaintiff's examination and/or treatment of patients Reba Cooksey, Lillie Scott, and Lisa Gass was below the standard of care in the community, because this evidence was highly prejudicial and was irrelevant to defendant's claim of malicious prosecution against plaintiff; (2) denying plaintiff's motion for new trial on the grounds that the jury's verdict on defendant's malicious prosecution claim was so excessive as to show bias, passion and prejudice on the part of the jury as a result of the court's admission of irrelevant and highly prejudicial evidence against plaintiff; (3) submitting verdict form A to the jury, because this instruction suggested that the jury should return a verdict in favor of defendant and also that the jury had to return actual damages in addition to the attorneys' fees and expenses, and was therefore misleading, confusing and prejudicial; (4) overruling plaintiff's motion for a new trial, or in the alternative his motion for remittitur because the jury's verdict of $69,034.90 on defendant's claim was excessive in that no actual damages were pleaded or proven other than costs and attorneys' fees of $19,034.90; (5) failing to direct a verdict in favor of plaintiff on defendant's claim because the evidence failed to show as a matter of law that plaintiff lacked reasonable grounds for initiation of the underlying libel and slander action; and (6) failing to direct a verdict in favor of plaintiff on defendant's breach of contract claim, because defendant failed to offer any evidence showing that he was the intended third-party beneficiary of any agreement between Hospital and plaintiff. We affirm.

Plaintiff is an oral and maxillofacial surgeon and has been on Hospital's staff since 1981. Defendant is a head and neck cancer surgeon and has been on the staff of Hospital since 1978. On December 1, 1980, plaintiff applied for appointment to Hospital's Department of Oral and Maxillofacial Surgery. His application included a request for privileges.

Some time after his appointment and before August of 1981, plaintiff requested additional privileges. In August of 1981, plaintiff met with Dr. Eufemio G. Verzola, then Hospital's Chief of Surgery, and Ms. Lucille Smith, Director of Medical Staff Services, to discuss his request. At the meeting, Dr. Verzola had a copy of the last three pages of plaintiff's application concerning his request for privileges upon which he made notations (privilege sheets). During the meeting, he made the following notation in the section

titled "DELINEATION OF DENTAL PRIVILEGES DESIRED" next to the box for "Malignant tumors": "—biopsy only." Dr. Verzola testified upon direct examination that he discussed with plaintiff that these would be the privileges he would have as a result of the meeting. Also upon direct examination, Dr. Verzola identified a copy of the privilege sheets.

In 1986, defendant had a conversation with plaintiff about Lisa Gass, a patient. On direct examination, defendant testified plaintiff called him to ask for help in his treatment of Ms. Gass, and that defendant told him that he had not obtained a routine nasal film on a fracture which was standard, and that defendant thought this was a problem for him. Defendant also testified he examined· Ms. Gass six weeks to two months later, and that she had a scar across the bridge of her nose, but the deformity was not great.

In November of 1989, defendant saw Reba Cooksey, who was plaintiff's patient and was referred to defendant by another doctor. At trial during defendant's evidence, defendant testified on direct examination that he diagnosed Ms. Cooksey as having a large tumor growing in her parotid gland below the ear on the right side, and that she had a scar in the area and below her jaw bone on the right side. He testified that Ms. Cooksey told him that she saw plaintiff, and that plaintiff had advised her to have an open biopsy of this tumor in his office. Defendant testified that he was shocked that anyone would undertake a blind open biopsy on an important tumor like a parotid gland tumor in an office setting because there is no control for bleeding and there is tremendous risk of injury to the facial nerve, which governs all the functions of the face. He testified he would have never done such a biopsy and that it was below the standards of care of Jefferson County. Defendant testified he would follow up a negative biopsy on a parotid gland with more evaluation, and that he would consider the failure to follow up on such a biopsy below the standards of care in Jefferson County. He testified that he saw Ms. Cooksey one to two years after plaintiff's biopsy.

Subsequently, Dr. Verzola told defendant that privileges for Dr. Zulian, an oral sur-

geon and plaintiff's partner, were considered and were granted. Defendant then called Dr. Michael K. Blank, Hospital's Chief of Surgery, to express his concern about plaintiff, whom he described to Dr. Blank as "Dr. Zulian's senior partner." Dr. Blank told defendant to write a letter to him detailing his concerns. Defendant then wrote a letter dated February 15, 1990, to Dr. Blank stating that plaintiff missed Cooksey's diagnosis, delayed her treatment for one year, and needlessly complicated her eventual tumor surgery. At trial during defendant's evidence, defendant testified on direct examination that the purpose of the letter was to express his concern about Reba Cooksey and not Lisa Gass. He also testified:

> I felt like that the treatment of Reba Cooksey [by plaintiff] was so far below the usual and normal, and customary standards of Head and Neck care at Jefferson Memorial Hospital since I've been on staff in 1978, that we really should review salivary gland privileges for this new oral surgeon[, Dr. Zulian,] coming on board in the peer review section of the Department of Surgery.

Later, Dr. Ben Albano, then President of the Medical Staff at Hospital, approached defendant and told him about plaintiff's cancer patient, Lillie Scott, whose case had been presented to Dr. Albano at a tumor conference, and asked him to review Ms. Scott's case and report back to Dr. Blank. Plaintiff had resected a tumor from Ms. Scott's anterior maxilla. After receiving Dr. Blank's permission to review Ms. Scott's case, defendant reviewed her chart at Hospital, and then called Dr. Blank to request permission to review plaintiff's cancer privileges. After receiving Dr. Blank's permission, defendant testified that he and Ms. Smith reviewed plaintiff's privilege sheets together. Defendant testified on direct examination by his counsel about his review of the privilege sheets with Ms. Smith as follows:

Q. [D]id Lucille Smith read to you those privileges?

A. Yes, sir. She had to. I couldn't read that handwriting.

Q. And which ones did she read to you?

A. Specifically, I asked her about the bottom of this first page [of the privilege sheets] where it says in ink "no tongue resection for" cancer—I've come to find out, "ca—no parotid surgery."

\*     \*     \*     \*     \*     \*

Q. After you reviewed the privileges of [plaintiff], what did you do?

A. Well, there's more data in those privileges besides that first page. The second page and third page have important data on those as well. And I asked Lucille Smith about both those pages.

The second page has a column that says there's a check or request for malignant tumors. And next to that second page in Dr. Verzola's handwriting Lucille Smith advised me it said "biopsy only."

And the third page of those privileges also had real concern as far as I was concerned. The entire privilege document is simply a copy of what I understood to be [plaintiff]'s original application for privileges. This entire privilege document has no granting of privileges. It simply has a request for privileges.

There are three columns to be checked. The column that says "Request" a column says "Recommended" a column that says "Not [R]ecommended." Only the column that says "Request" had an "X" on it. And the only other thing on this entire document was writing by Dr. Verzola. And, apparently, some other writing by [plaintiff], with no signature for these privileges.

A signature by the applicant, [plaintiff], a signature by Dr. Sam Bai as Chairman of the Credentials Committee, that signature wasn't dated, and Dr. Bai is Chairman of the Credentials Committee didn't appoint—did not appoint—didn't defer [plaintiff] for staff appointment.

Further, Mr. Ebel, who is listed down here as the secretary of the governing board, is the only appointment signature on this entire copy, and that appointment—I was assuming that was a copy of the original privilege. And that's dated March 25th, 1981.

\*     \*     \*     \*     \*     \*

Q. Now, after reviewing the privileges with Lucille Smith's office, what did you do?

A. I called Dr. Blank and I said, Mike, I think we've got a problem. I said, This privilege, the best that I can understand, is a specific denial of any cancer, except for biopsy. And I really think that we need to look at this in a peer review section. This is a terrible case with terrible consequences, from what I can tell. I think this case needs to be looked at.

Q. And did they [sic] advise you of anything?

A. Yes, he did.

Q. And what did he advise you?

A. He said, You dictate a letter to Lucille Smith to me today. I'll bring it up at the very next Department of Surgery Peer review session.

Defendant wrote a letter dated February 22, 1990 to Dr. Blank stating that plaintiff's treatment of Scott was a travesty in oncologic treatment deserving the severest reprimand from the Department of Surgery, and that plaintiff should be refused any head and neck privileges at Hospital.

In a letter to plaintiff dated March 8, 1990, Dr. Blank "reminded" plaintiff and Dr. Zulian to attend a meeting on March 14, 1990 concerning plaintiff's treatment of Lillie Scott. At the March 14, 1990 meeting attended by Dr. Zulian but not plaintiff, Dr. Blank, defendant, and other doctors decided to notify plaintiff by registered mail of the surgery department meeting of March 21, 1990, at which they would discuss his treatment of Lillie Scott and Reba Cooksey. Dr. Blank wrote a letter to plaintiff dated March 16, 1990 notifying him of the March 21, 1990 meeting.

At the March 21, 1990 meeting, plaintiff, defendant, Dr. Blank, Dr. Verzola, Mr. Seek, who was Hospital's Chief Executive Officer, Ms. Smith, and other doctors discussed plaintiff's privileges and treatments. Dr. Blank asked Mr. Seek to find the records concerning plaintiff's privileges, and Mr. Seek complied. Against defendant's objections, the meeting determined that plaintiff had the privileges.

On July 23, 1990, plaintiff filed an action against defendant alleging: in Counts I and II that defendant libelled plaintiff by intentionally, maliciously, and wrongfully publishing and circulating the February 15, 1990 letter concerning Reba Cooksey and the February 22, 1990 letter concerning Lillie Scott respectively; and in Count III that defendant willfully, wantonly, and maliciously made false and slanderous statements to plaintiff's patient Lisa Gass, specifically that defendant informed Ms. Gass that plaintiff was not qualified to treat her for her injuries. Additionally, Count III alleges that as a result of defendant's statements to Ms. Gass, she filed a complaint against plaintiff with the Missouri Dental Board.

On October 3, 1990, defendant filed a motion to dismiss plaintiff's petition. On November 29, 1990, defendant filed a third-party petition against Hospital alleging in Count I that: when defendant was granted privileges by Hospital, he agreed in consideration for the granting of privileges to be governed by the Bylaws; defendant has at all times abided by the terms, covenants, and conditions of the Bylaws; and Hospital agreed in its Bylaws to be bound by the Bylaws. Defendant further alleged in his third-party petition that: the statements allegedly made by defendant in plaintiff's Counts I and II constitute the type of peer review communications deemed privileged by the Bylaws; defendant gave notice to Hospital of the pendency and nature of plaintiff's action showing that if defendant was liable therein, Hospital would be bound to indemnify him for his costs, including attorneys' fees; as part of such notice, defendant offered Hospital the control of the defense of such action, but Hospital failed and refused to take part in such defense. Defendant prayed judgment for his costs and attorneys' fees. We have read the Bylaws carefully, and have been unable to discern any provisions for the Hospital to indemnify any practitioner for litigation costs, including attorneys' fees.

In Count II of his third-party petition, defendant alleged that he demanded Hospital request plaintiff to execute a release in favor of defendant and Hospital refused, pursuant to the Bylaws, Rules and Regulations. Defendant prayed for judgment against Hospital for his costs and attorneys' fees.

Subsequently, Hospital filed its motion to dismiss defendant's third-party petition.

On May 1, 1991, the court issued an order ruling defendant's motion to dismiss plaintiff's petition was submitted as a motion for summary judgment with supporting evidentiary matter. The court further decided that as to Count I of plaintiff's complaint concerning the February 15, 1990 letter, the motion is overruled; that as to Count II concerning the February 22, 1990 letter, the motion is sustained; and as to Count III concerning statements made to Lisa Gass, the motion is moot as plaintiff does not intend to proceed on it and concedes the statute of limitations.

Defendant filed an answer to Count I of plaintiff's petition, and later filed his motion for summary judgment as to Count I of plaintiff's petition, which the trial court sustained.

Subsequently, defendant filed his claim for malicious prosecution and punitive damages against plaintiff. Plaintiff filed his reply. Later, defendant filed his amended petition against Hospital. The amended petition recited Counts I and II of his original petition, and added Count III, which alleged that Hospital's actions or inactions with respect to plaintiff's suit against defendant were maliciously motivated.

In May, 1993, plaintiff filed his motion for summary judgment as to defendant's claim for malicious prosecution, which was overruled. Subsequently, plaintiff filed a motion in limine to prohibit defendant from introducing any evidence concerning his treatment of Gass, Cooksey, and Scott, which the trial court denied.

On May 19, 1993, the trial court sustained Hospital's motion for summary judgment as to Counts I and II of defendant's petition and overruled it as to Count III.

At trial during defendant's evidence, Dr. Blank testified upon recross-examination he was Chairman of the March 14, 1990 and March 21, 1990 meetings, and that Mr. Seek did not tell him what to do or overrule him during those meetings or limit any discussion at either meeting. Ms. Smith testified on

direct examination that the check mark in blue ink in the box for "Appointment Recommended" directly above Dr. Bai's signature in black ink on plaintiff's application appeared after August 1981, and that Mr. Seek's undated notation at the bottom of the page also was in blue ink. She also testified that she did not know how the check mark showed up. On later cross-examination, she testified that no one at Hospital ever told her to alter plaintiff's privileges file.

Subsequently, defendant read the deposition of Thelma Roux, Lillie Scott's sister. She testified that plaintiff cut Ms. Scott's ear during the surgery, and laughed about it. She also testified that Ms. Scott never consented to plaintiff operating on her ear.

Afterwards, defendant testified on direct examination that he verified his original opinion that Ms. Scott had a huge second cancer in her right tonsil, which showed very clearly on the X-rays. He also testified that when plaintiff's libel and slander suit was filed, it was published in a local newspaper, and he also testified that he knew of other doctors who were aware of plaintiff's action.

After the close of defendant's evidence, Hospital moved for directed verdict on defendant's claim for malicious prosecution, and the trial court sustained the motion.

During plaintiff's evidence, plaintiff's counsel for his claim against defendant for libel and slander testified on cross-examination that plaintiff's treatment was not the prime factor in the case, and that plaintiff told him certain items in the letters were false. On cross-examination, plaintiff testified that before he filed suit, Mr. Seek told him that Hospital would take the position that the meetings were not peer review.

During defendant's rebuttal evidence, defendant testified on direct examination that the report plaintiff prepared concerning his treatment of Ms. Scott indicated he removed all the upper jaw teeth, violating oncological standards because the teeth were in the cancer area.

The jury returned a verdict in favor of defendant on his malicious prosecution claim and awarded $50,000.00 for actual damages and $19,034.90 for his attorneys' fees, and also returned a verdict in his favor on his alternative count for breach of contract and awarded no damages.

In his first point, defendant asserts that the trial court erred in refusing to give his proposed instruction on punitive damages against plaintiff because defendant adduced evidence that plaintiff acted with legal malice in that he filed the libel and slander suit to silence defendant's criticisms during the peer review process.

Plaintiff maintains the trial court properly refused to give defendant's proposed instruction on punitive damages because there was no evidence that he had an improper motive in filing his libel and slander action.

■ The elements of an action of malicious prosecution are: (1) the commencement of a prosecution against the defendant; (2) the plaintiff's instigation of the prosecution; (3) the termination of the proceeding in favor of the defendant; (4) the want of probable cause for the prosecution; (5) the plaintiff's conduct was actuated by malice; and (6) the defendant was damaged. *See Sanders v. Daniel International Corporation*, 682 S.W.2d 803, 807[1] (Mo. banc 1984).

■ Our Supreme Court has set out three degrees of malice: (1) actual malice, which means ill will, spite, personal hatred, or vindictive motives; (2) legal malice, which embraces any improper motive; and (3) malice in law, which is defined as a wrongful act done intentionally without just cause or excuse. *Proctor v. Stevens Employment Services, Inc.*, 712 S.W.2d 684, 686[2–4] (Mo. banc 1986). In a civil malicious prosecution case, a defendant must show malice in law, which rests upon a legal presumption independent of any proof concerning a plaintiff's mental state. *Proctor*, 712 S.W.2d at 686–87[5, 6]. For a submission of a punitive damage instruction in a civil malicious prosecution suit, a defendant must show legal malice, which demands proof of a mental state, unlike malice in law. *Id.* Specifically, defendant must present evidence from which the jury could infer and find that plaintiff acted with an improper or wrongful motive—that is, *malo animo*. *See Sanders*, 682 S.W.2d at 807[3], 810[5].

■ Defendant argues that the trial court should have submitted the punitive damages instruction because legal malice can be inferred from the same evidence he used to prove plaintiff acted without probable cause when filing the law suit for libel and slander. Defendant contends he presented evidence indicating that after defendant questioned plaintiff's actions during the peer review process, plaintiff filed a lawsuit against defendant solely to harass or intimidate defendant into keeping silent about plaintiff's negligent treatment of Lisa Gass, Reba Cooksey, and Lillie Scott, and his lack of cancer privileges at Hospital. Assuming, without finding, that the evidence presented concerning plaintiff's treatment of Gass, Cooksey, and Scott and his surgical privileges indicates plaintiff was negligent, it is not sufficient to support an inference as to plaintiff's mental state, that is, he acted with an improper motive when filing suit, specifically, that he filed the suit to silence defendant about his activities. Point denied.

In his second point, defendant contends that the trial court erred in entering a directed verdict against defendant as to Count III of his third-party petition against Hospital because defendant adduced evidence that Hospital assisted and encouraged plaintiff in prosecuting the libel and slander action. Defendant asserts he presented substantial evidence that Hospital, through Mr. Seek, its Chief Executive Officer, attempted to hinder any discussion of plaintiff's substandard treatment or lack of privileges at the surgery department meetings preceding plaintiff's libel and slander action, and altered plaintiff's privilege sheets as a means of showing support for plaintiff and the position he took against defendant. Defendant also contends that he presented evidence that plaintiff's privilege documents were falsified by Hospital's personnel to make it appear that plaintiff had privileges for cancer surgery. Defendant further argues that he presented evidence that Hospital's position that his February and March letters did not occur during the peer review process was patently unreasonable, and that Hospital took such a position to aid plaintiff's libel and slander suit. Defendant asserts this position aided plaintiff's suit because otherwise Hospital would have had to indemnify defendant, who then could continue speaking out about plaintiff's transgressions without fear of liability for a judgment against him. Defendant opines that a logical inference is that plaintiff, buoyed by the fact that Hospital would go to such lengths to support his position, was encouraged to file his wrongful action for libel and slander against defendant.

Hospital argues that the trial court properly directed a verdict in favor of it on defendant's malicious prosecution claim against it because he adduced no evidence that anyone there instigated the suit against him. Hospital contends that it is undisputed that it did not file suit against defendant, and there was no evidence that anyone there specifically advised, encouraged or pressured plaintiff to file suit.

■ In a civil malicious prosecution case, defendant must prove that the plaintiff instigated the prosecution. *Sanders*, 682 S.W.2d at 807[1]. Instigation requires proof that the plaintiff stimulated, promoted or encouraged the specific action taken. *Burnett v. Griffith*, 769 S.W.2d 780, 784[4] (Mo. banc 1989). Mere passive knowledge of or acquiescence in the acts of another is not sufficient. *Id.*

■ At the outset, we note that the original copies of plaintiff's application and privilege sheets are not part of the record on appeal. However, even assuming the blue ink check mark indicating Dr. Bai's recommendation of plaintiff's appointment to the medical staff above his black ink signature is the same color as the ink in Mr. Seek's notation at the bottom of the same page of plaintiff's application, these facts would not support a finding that Mr. Seek altered the documents. Further, there is not sufficient evidence to show that Mr. Seek attempted to suppress the meetings. Additionally, the transcripts of the meetings indicate that Mr. Seek complied with Dr. Blank's directions and expressed his opinions, and Dr. Blank's testimony indicates that Mr. Seek did not try to overrule him at the meetings. Point denied.

In his third point, defendant asserts the trial court erred in entering summary judg-

ment against him as to Counts I and II of his petition because the Bylaws create a contractual agreement by Hospital to defend and indemnify him against plaintiff's libel and slander action.

■ Points relied on shall state briefly and concisely what actions or rulings of the court are sought to be reviewed and wherein and why they are claimed to be erroneous. Rule 84.04(d). The record indicates that Count I of defendant's claim concerns Hospital's alleged duty to defend and indemnify, and Count II concerns Hospital's alleged duty to request plaintiff to execute a release in defendant's favor. Defendant has failed to state in his point wherein and why the trial court erred as to Count II. Thus defendant has presented nothing for our review regarding Count II. *See Hubbs v. Hubbs,* 870 S.W.2d 901, 908[10–13] (Mo.App.S.D.1994). Additionally, we note that defendant fails to explain wherein and why the trial court erred as to Count II in the argument section of his brief. As to Count I, defendant has satisfied the prerequisites of 84.04(d), as plaintiff concedes in his brief.

■ It is well-known that when considering an appeal from a summary judgment, we review the record in the light most favorable to the party against whom summary judgment was granted. *ITT Commercial Finance Corp. v. Mid–America Marine Supply Corp.,* 854 S.W.2d 371, 376[1] (Mo. banc 1993). Our review is essentially *de novo. ITT,* 854 S.W.2d at 376[4]. The criteria on appeal for testing the propriety of summary judgment are no different from those which should be employed by the trial court to determine the propriety of sustaining the motion initially. *Id.* at 376[5]. The propriety of summary judgment is purely an issue of law. *Id.* at 376[6]. As the trial court's judgment is founded on the record submitted and the law, we do not defer to the trial court's order granting summary judgment. *Id.*

■ In determining whether written agreements establish a duty to indemnify, a specific and express intent to indemnify is required. *See Missouri Pacific Railroad Co.*

*v. General Mills, Inc.,* 743 S.W.2d 433, 434–35 (Mo.App.1987).

■ Assuming that the Bylaws constitute a contract between Hospital and defendant, and that defendant's letters were part of the peer review process, the Bylaws do not contain any language indicating that Hospital is required to indemnify its medical staff for litigation costs. Additionally, § 537.035, R.S.Mo.Cum.Supp.1993, pertaining to peer review committees and immunity to civil suits, does not impose a duty on Hospital to indemnify. Point denied.

In plaintiff's first point on cross-appeal, he contends that the trial court erred in admitting evidence that his examinations and/or treatments of Reba Cooksey, Lisa Gass, and Lillie Scott were below the standard of care in the community, because this evidence was highly prejudicial and was irrelevant to defendant's claim of malicious prosecution. Plaintiff argues that the focus of the malicious prosecution action should have been on his actions in bringing his defamation claim and his intent in filing suit against defendant, specifically evidence indicating what plaintiff believed prior to initiating the suit. Plaintiff asserts evidence as to whether he met the standard of care in the community with regard to his treatment of Gass, Cooksey, and Scott was not relevant to establishing defendant's cause of action for malicious prosecution. Plaintiff argues that defendant's evidence as to the quality of care received by them may have been relevant in a defamation action or medical malpractice action, but not in a malicious prosecution action.

Plaintiff argues that the only relevant evidence on the issue of probable cause would be evidence tending to show what plaintiff believed prior to initiating the underlying action, and whether his treatment of the patients was correct or not, is immaterial to plaintiff's beliefs and motives at the time the lawsuit was initiated.

Defendant contends that medical evidence and evidence concerning the quality of plaintiff's care were necessary for the jury to decide whether plaintiff had probable cause. He asserts that if plaintiff filed the action knowing defendant's statements were true, then his action for libel and slander was

frivolous. He claims he was entitled to present evidence in support of the truth of the statements he made in his two letters.

■ As a general rule, the determination of the relevance of proof offered at trial is for the sound discretion of the trial court and is not ordinarily reviewable upon appeal. *Midwest Materials Co. v. Village Development Co.*, 806 S.W.2d 477, 495[24] (Mo.App. 1991). The test for relevancy is whether an offered fact tends to prove or disprove a fact in issue or corroborates other evidence. *Kansas City v. Keene Corp.*, 855 S.W.2d 360, 367[7] (Mo. banc 1993). Exclusion of evidence of collateral matters is demanded when the evidence introduces many new controversial points and a confusion of issues would result, or there would be unfair surprise or an undue prejudice disproportionate to the usefulness of the evidence. *Trejo v. Keller Industries, Inc.*, 829 S.W.2d 593, 596[4] (Mo.App.1992).

■ In a civil proceeding, probable cause consists of such facts and circumstances as will warrant a cautious, reasonable, and prudent person in the honest belief that the actions and the means taken in prosecution of it are just, legal and proper. *Young v. Jack Boring's, Inc.*, 540 S.W.2d 887, 895[6] (Mo.App.1976).

Informative is *Nicholson v. Lucas*, 21 Cal. App.4th 1657, 26 Cal.Rptr.2d 778 (1994). In *Nicholson*, dentist applied for appointment to the medical and dental staff of a hospital, and was awarded provisional staff membership, which requires observation by designated proctors. *Nicholson*, 26 Cal.Rptr.2d at 779. It came to the attention of the surgery supervisory committee that dentist was receiving unfavorable proctor reports of his surgeries, specifically, the chairman of that committee talked with others on the medical staff who apprised him of excessive length of surgeries performed, excessive blood loss by patients, and the necessity of follow-up or repeat surgeries upon some patients. It was decided that the section of dentistry of the hospital should review and pass on the issue of dentist's permanent privileges. Subsequently, a motion was passed to deny dentist privileges for all surgical procedures except teeth extractions. *Id.* at 780. It was found that dentist's patients while undergoing procedures consistently experienced large volumes of blood loss, there were numerous examples of excessive surgery time, and his surgical expertise and technical skills were lacking. *See id.* at 783[7]. Dentist then requested a hearing at which the judicial review committee of the hospital determined that the burden of proof by a preponderance of the evidence was not met to justify deletion of all of dentist's surgical privileges, and recommended dentist be continued on proctoring for all surgeries other than dental extractions. *Id.* at 780. Dentist then sued certain doctors for maliciously prosecuting a disciplinary administrative proceeding. *Id.* at 779, 780. Subsequently, the trial court granted the doctors' motion for summary judgment. *Id.* at 780. On appeal by dentist, the court held that dentist never rebutted the doctors' showing that the denial of his surgical privileges was based upon probable cause. *Id.* at 781[1]. The court found the initial decision to delete his privileges was based upon substantial and legitimate concerns with the excessive operating room times and excessive blood loss. *Id.* at 782–83[7]. The court reasoned that the doctors offered their own medical opinions concerning dentist's performance based upon the patients' hospital charts. *See id.* at 784[7].

■ Here, the record indicates that plaintiff filed a petition alleging that defendant libelled plaintiff in his February 15, 1990 and February 22, 1990 letters to Dr. Blank, Chief of Surgery at Hospital. In his malicious prosecution claim, defendant testified at trial about plaintiff's treatment of Gass, Cooksey, and Scott, and gave his opinion about the quality of those treatments. He also offered medical records written by plaintiff concerning those treatments upon which he drew his conclusions. The evidence was probative as to what plaintiff knew and why defendant made his statements. Thus, we find this evidence was relevant to the disputed question of whether plaintiff had probable cause to sue defendant for libel and slander.

Our finding comports with *Nicholson, supra.* Additionally, the record indicates de-

fendant and Dr. Blank formed their opinions concerning plaintiff's treatment of Gass, Cooksey, and Scott before plaintiff filed his libel and slander suit. Point denied.

In his second point, plaintiff contends the trial court erred in overruling his motion for new trial on the grounds that the jury's verdict against him was so excessive as to show bias, passion and prejudice on the part of the jury as a result of the court's admission of irrelevant and highly prejudicial evidence against him. Our disposition of plaintiff's first point is also dispositive of the second point and we need not address it.

In his third point, plaintiff asserts the trial court erred in submitting verdict form A to the jury which provided:

On the claim of [defendant] Philip Martin, M.D., for malicious prosecution against [plaintiff] Gregory Pernoud, D.D.S., we, the undersigned jurors, find in favor of:

_____or_____
Philip Martin, M.D.    Gregory Pernoud, D.D.S.

Note: Complete the following paragraph only if the above findings [sic] is in favor of [defendant] Philip Martin, M.D.

We, the undersigned jurors, assess the damages of Dr. Martin as follows:

For actual damages $_____

For attorneys [sic] fees and expenses in the amount of $19,034.90.

In the section of verdict form A concerning actual damages, the jury wrote in the amount of $19,034.90 on the line provided and then scratched it out, and above that, the jury wrote in the amount of $50,000.00. Plaintiff argues this instruction suggested that the jury should return a verdict in favor of defendant and also that the jury had to return actual damages in addition to the attorneys' fees and expenses, and was therefore misleading, confusing and prejudicial. Plaintiff contends the amount of attorneys' fees should be left blank because this is a factual issue to be determined by the jury. Plaintiff also opines that by filling in the amount of attorneys' fees, the court created a presumption that a verdict should be entered in favor of defendant, and that the jury had to return actual damages in addition to the attorneys' fees. Finally, plaintiff asserts verdict form A deviates from the M.A.I.

■ We find that the instruction was not prejudicial. The record and the briefs indicate the amount of defendant's attorneys' fees is not in dispute. Further, no presumption was created by filling in the amount of the attorneys' fees because according to the verdict form, the jury had to find for plaintiff or defendant before awarding actual damages and attorneys' fees. Point denied.

In his fourth point, plaintiff asserts the trial court erred in overruling his motion for new trial, or in the alternative motion for remittitur because the jury's verdict of $69,-034.90 against plaintiff on defendant's claim for malicious prosecution was excessive in that no actual damages were pleaded or proven other than costs and attorneys' fees of $19,034.90. Plaintiff argues that defendant did not plead special damages, and that even if he had, there was no evidence adduced by him of any damage or injury to his reputation or that he sustained any physical or mental injury as a result of plaintiff's suit.

■ In an action for malicious prosecution, damages are recoverable for every element of the injury, including mental and physical suffering, injury to fame and reputation, and the general impairment of social standing. *Young*, 540 S.W.2d at 897[14]. Damages for humiliation, shame and mental anguish are elements of actual damages which cannot be measured precisely. *Id.* at 897[16]. A complainant who has established the essential elements of the cause of action in a malicious prosecution case may recover for harm to his reputation and disgrace and distress necessarily resulting from that prosecution without specific proof of such injuries. *Id.*

■ Here, it is not disputed that plaintiff commenced and instigated the prosecution against defendant for libel and slander, it was terminated in favor of defendant, and that defendant filed a claim against plaintiff for malicious prosecution in which he alleged that he suffered damages as a result of plaintiff's action. Further, defendant offered relevant evidence concerning the absence of probable cause for plaintiff's action and the presence of malice, that is, plaintiff acted

**540**

intentionally without just cause or excuse. Finally, defendant testified that when plaintiff's libel and slander suit was filed, it was published in a local newspaper, and that other doctors were aware of plaintiff's action. Since defendant did not have to prove harm to his reputation and disgrace and distress specifically, we find this evidence is sufficient for a showing of damages. Point denied.

In his fifth point, plaintiff asserts the trial court erred in failing to direct a verdict in favor of plaintiff on defendant's malicious prosecution claim because the evidence failed to show, as a matter of law, that plaintiff lacked reasonable grounds for initiation of the underlying libel and slander suit.

■ Where failure to grant a directed verdict for the party against whom relief or recovery is sought is the error asserted, we review the evidence presented at trial to determine whether complainant introduced substantial evidence that tends to prove the facts essential to complainant's recovery. *See Schaffer v. Bess,* 822 S.W.2d 871, 876[1] (Mo.App.1991). Due to our previous finding that defendant established the essential elements of his cause of action for malicious prosecution, we shall not address plaintiff's fifth point.

In his sixth point, plaintiff claims the trial court erred in failing to direct a verdict in his favor on defendant's claim for breach of contract because defendant failed to offer any evidence showing that he was the intended third-party beneficiary of any agreement between Hospital and plaintiff.

As we have already found that defendant established the essential elements for malicious prosecution and the record indicates that the jury found for defendant on his malicious prosecution count, we need not address plaintiff's point concerning defendant's alternative count for breach of contract.

Judgment affirmed.

AHRENS, P.J., and KAROHL, J., concur.