Lee YOUNG et al., Respondents,

v.

JACK BORING'S, INC., et al.,
Appellants.

No. KCD27132.

Missouri Court of Appeals,
Kansas City District.

June 1, 1976.

Motion for Rehearing and/or Transfer
Denied July 6, 1976.

Application to Transfer Denied
Oct. 12, 1976.

Laurence R. Tucker, Gordon N. Myerson,
Kansas City, for appellants;  Morris, Mitch-

ell, Larson, King, Stamper & Bold, Kansas City, of counsel.

Walter R. Simpson, George H. Barr, Kansas City, for respondents; Sheridan, Sanders, Carr, White & Mason, Kansas City, of counsel.

Before SHANGLER, P. J., and SWOFFORD and SOMERVILLE, JJ.

SHANGLER, Presiding Judge.

The plaintiffs Young, husband and wife, had judgment against defendant Jack Boring's Inc., for $8000 actual and $25,000 punitive damages on a pleading for malicious prosecution. The cause of action arose when Boring's employees repossessed from the Youngs a television set under a replevin which issued from the magistrate on the affidavit of the defendant, and which they found later that day, had been taken by mistake. The replevin action was terminated by the Boring's dismissal without prejudice, and this action ensued.

The original petition was in multiple counts. Count III was directed against Constable Tince Walker who falsely returned the writ *non est* when, in fact, he had served the plaintiffs and removed their property. The constable failed to answer and the plaintiffs took judgment by default against him on Count III of the original petition. This judgment was set aside within the month on stipulation, and the constable pleaded over.

Then, on October 29, 1973—twenty-one months after the original petition and two weeks before the trial—the plaintiffs amended their petition to allege counts for malicious prosecution and loss by the wife

of consortium against Boring's and several employees. The pleading did not reiterate the separate cause of action against the constable on which the plaintiffs had by then brought an independent suit. Before the jury was empaneled, the plaintiffs dismissed Count II of the amended petition and proceeded to trial on the claim for malicious prosecution. At submission, only Boring's remained, and the judgment was taken against that defendant alone.

On the morning of the trial, the defendant Boring's moved the dismissal of the petition on the ground that the suit had been fully compromised and settled and that the plaintiffs were bound by that contract to accept $1650 in satisfaction of their claim and to discontinue the litigation.[1] The *in camera* discussion on the motion discloses that counsel for Boring's informed counsel for the plaintiffs four days earlier of his intention, at the day of trial, to answer the amended petition to raise the issue that the cause of action had been compromised and settled and that he would then also move the dismissal of the petition for that reason.

The plaintiffs argued for the denial of both the motion and the defense on grounds that they were untimely as pleadings and had been, in any event, substantively abandoned by the nineteen-months lapse between the purported settlement agreement and the assertion of that defense in bar of the action. The court concluded, as a matter of law, that the motion was not timely made and the substance of it abandoned, and ordered the accord and satisfaction defense stricken from the answer.[2]

---

1. Neither the Motion to Dismiss nor the Answer to the Amended Petition [which presumably asserts the defense of accord and satisfaction reiterated in the motion] appears in the transcript on appeal. The court and the parties have treated these pleadings as actually tendered, so we rule the issues accordingly.

2. Although the court did not determine the merits, the defendant was allowed an offer of proof which was made by the testimony of the attorney who then represented the plaintiffs. He testified that, prompted by a domestic exigency, the plaintiffs agreed to settle their claim

· for $1650. The settlement was concluded on those terms and the draft was endorsed by the plaintiffs on April 11, 1972, but when a disagreement arose as to the apportionment of the proceeds, the plaintiffs refused to execute the release. The attorney then voided the signatures and informed counsel for Boring's what had passed and returned the instrument to him. Counsel for plaintiffs then withdrew his representation. The plaintiffs made no formal proof on the issue but only presented the statement of counsel that they had authorized settlement against the constable only and that it was not

The defendant Boring's contends that the denial of the motion to dismiss and the deletion of the accord and satisfaction defense from their answer to the amended petition were errors of law and require reversal. The defendant argues here that Boring's was entitled as of right to an answer timely filed under the provisions of Rule 55.33(a):

A party shall plead in response to an amended pleading within the time remaining for response to the original pleading or within 10 days after service of the amended pleading, whichever period may be the longer, unless the court otherwise orders.

The amended petition was filed on October 29, 1973, and defendant was not served until November 9, 1973. The answer to the amended petition was filed with the court on the morning of trial, November 12, 1973, and thus within the ten-day prescription of the rule.

■ The rules of civil procedure intend that a trial court shall allow amendments to pleadings liberally, but such a purpose does not bind a court to such a course. *Parsons Construction Co. v. Missouri Public Service Co.*, 425 S.W.2d 166, 174[13, 14] (Mo.1968). In the case of an amended petition, a party is entitled to make response within the prescription of Rule 55.33(a) *unless the court otherwise orders.* The question here is whether defendant Boring's was entitled as a matter of right to make an answer on the day of trial which for the first time raised the defense of accord and satisfaction. That rule no doubt sanctions response by a defendant to any new matter brought into the litigation by an amendment by the plaintiff. *Kroh Brothers Dev. Co. v. State Line Eighty-Nine, Inc.,* 506 S.W.2d 4, 13[15] (Mo.App.1974). It is clear, however, that where in the imminence of trial an answer is amended to set up a new defense on facts known before, it is within the discretion of the court to strike the defense. *Boling v.*

*State Farm Mutual Automobile Ins. Co.,* 466 S.W.2d 696, 699[4–6] (Mo.1971).

A case closely analogous to the positions of the parties here is *Kroh, supra,* where the plaintiff amended the petition by striking all reference to an attorney fee. The petition was otherwise unchanged. That same day, the court entered summary judgment for the plaintiff. The defendants contended that the judgment was improperly entered since under [then] Rule 55.53 they had ten days to plead to the amended petition. The court noted that neither defendant during the months of the pendency of the litigation had sought leave to amend the answer and since the amendment introduced no new issue, an answer was not required. See, also, *Trotter v. Carter,* 353 Mo. 708, 183 S.W.2d 898, 901[1, 2] (1944). The opinion concluded [l. c. 14]:

The court below had the right to assume that [defendants] had asserted all of their defenses to Kroh's claim in their answers as required of them under [then] Rule 55.09; Rule 55.10 . . . . This is particularly true since no request had been ·made for almost four months to file . . . answers.

The circumstances here are comparable. The negotiations for settlement took place in April of 1972, but the defendant did not attempt to raise the issue until November 12, 1973, although the rights in the matter were known or discoverable by the defendant during those months. The amended petition did not in any way change the causes of action pleaded in Counts I and II [malicious prosecution and loss of consortium], but only deleted Count III which pleaded a separate recovery against the constable.

■ It was a proper exercise of discretion for the trial court to strike the defense of accord and satisfaction and to deny the dismissal motion under these circumstances. It is not necessary to examine the additional ground for decision—that the defendant had abandoned the defense by subsequent

until they saw the face of the release that they realized that the check they had endorsed in-

tended to compromise the claim against Boring's.

conduct in the litigation inconsistent with an intention to rely on the compromise settlement agreement—but only note that the circumstances before the court allowed a plausible application of that principle. See, 15A C.J.S. Compromise & Settlement § 29; *Thompson v. Municipal Bond Co.,* 23 Cal. App.2d 402, 73 P.2d 274, 278[5] (1937).

The malicious prosecution action against Boring's culminates a series of events which began in June of 1969 when the plaintiffs Young purchased a range, refrigerator and television with stand from the defendant. The purchase was financed through the General Electric Credit Corporation [GECC]. Two years later, an investigation revealed an internal scheme at Boring's had resulted in numerous fraudulent transactions. After consultation with its records, Boring's officials concluded that the Youngs had received their appliances as part of the fraud, and initiated a replevin action to repossess the merchandise.

The action to replevin the appliances from the Youngs was initiated on December 13, 1971, on behalf of Boring's by the statement and affidavit of office manager Richardson which alleged the wrongful detention of the property by the Youngs and resultant damage, and was assigned to Constable Tince Walker for service and certification of return. Three days later, the constable in the company of Richardson, two other Boring's employees and a police officer, undertook to serve the writ upon the Youngs at their home. The sound of the doorbell roused Ms. Young who, with her husband, was abed; she was confronted with the constable who announced he had a summons to serve on them. She awakened her husband and the constable displayed the writ and his badge to them, and as he pulled back his coat, a weapon was apparent.

Mr. Young invited the constable into his home and all five entered the living room. The constable then advised the Youngs of their purpose to retake the merchandise for Boring's, but Mr. Young protested that he owed no money to Boring's, that Boring's had no right to the property, and that they were making a mistake. Although the Youngs resisted his authority to serve them and seize their property, the constable searched the home for appliances with the serial numbers described in the replevin writ. Ms. Young testified that she offered to show the constable the GECC payment book as proof of ownership, Mr. Young told them he had signed a GECC note for the payment of the merchandise, but the constable refused to consider them. Mr. Young ordered the men out of the house but the police officer threatened him with arrest unless he stepped aside. With this, the Youngs finally acceded to the search and service. Young then attempted to call Boring's but the telephone was busy, so he dressed and drove to the Boring's office. There he reported to the secretary that some men had come to his home with an order to remove some property and that he had come about that. She gave him a number to call, and that resulted in a telephone conversation with a man to whom he explained that although he had purchased the merchandise through Boring's, GECC financed the transaction and the account with GECC was current. The man responded that the replevin was valid because the Youngs had obtained the property through fraud. Mr. Young commenced the return home in an angry and uneasy temper and was intercepted by a police officer for excessive speed.

At the Young home, the men searched the garage but found nothing there. The search in the front room of the home disclosed a television set with the same model number as described in the replevin writ. This article and the stand on which it rested were seized. The men had been on the premises for about twenty minutes and by then, Ms. Young had become angry and in virtual hysteria. When they left, her concern for her husband prompted her to drive to Boring's. She encountered him on the way, stopped by the police for the traffic infraction.

They returned home; Ms. Young then told her husband that only the television set had been taken. They went to the GECC

office to discuss the matter and were informed that there was no outstanding pick-up order for the merchandise on their behalf. Later that day, someone from Boring's telephoned an apology that a mistake had been made and that a barbeque pit was in delivery for the trouble and inconvenience caused the Youngs. The television set and stand were returned by Boring's; the barbeque pit was not accepted by the Youngs.

As to the evidence of the plaintiffs that they offered to prove ownership to the coterie seeking possession of the property under the writ of replevin, office manager Richardson testified that he asked Young for a bill of sale for the merchandise, but Young produced none or any other indicium of ownership. Richardson said that had such a receipt on a bona fide account been shown, he would have called the Boring's office. He acknowledged, however, that he heard the Youngs tell the constable in loud tones that the merchandise was theirs, yet he made no effort to verify their claim.

The branch manager for GECC, Jerry Swope, testified that the Youngs had financed two other purchases from Boring's through GECC and that no collection efforts were needed on any of these accounts. GECC had not received any information from Boring's concerning the Youngs. [The defendant Boring's judicially admitted that no money was owed them by the Youngs in December of 1971 when the action in replevin was initiated.]

On the day the property was taken from them under the writ, the Youngs engaged counsel to represent them in the magistrate court action and paid him $350 for those services. The replevin action was dismissed by Boring's within a few weeks of commencement, and this litigation followed.

■ A recovery for malicious prosecution requires the proof of six elements: 1) the commencement of an action against the plaintiff; 2) legally caused by the defendant; 3) terminated in favor of the plaintiff; 4) the absence of probable cause; 5) the presence of malice; and 6) damage to the plaintiff as a consequence. *Hoene v. Associated Dry Goods Corporation,* 487 S.W.2d 479, 483[1–6] (Mo.1972); *Kvasnicka v. Montgomery Ward & Co.,* 350 Mo. 360, 166 S.W.2d 503, 504[1] (1942).

An equivalent, but terser, statement of this principle is given in Restatement of Torts, § 674, which imposes liability upon the procurer or initiator of a civil proceeding against another for the harm done if: 1) the proceedings are initiated without probable cause; and 2) primarily for a purpose other than that of securing the adjudication of the claim on which the proceedings are based; and 3) the proceedings have terminated in favor of the person against whom they are brought. *Woods v. Standard Personal Loan Plan, Inc.,* 420 S.W.2d 380, 383[2] (Mo.App.1967); *McFarland v. Union Finance Company,* 471 S.W.2d 497, 499[3] (Mo.App.1971); *Houska v. Frederick,* 447 S.W.2d 514, 518[2, 3] (Mo.1969).

It is the contention of the defendant Boring's that, as a matter of law, the plaintiffs failed to prove that the replevin litigation was initiated without probable cause and with malice.[3]

The proof by the defendant on these issues was of a conjunction of coincidences which appeared to link the Young transaction with a scheme of internal fraud by certain Boring's employees to steal merchandise. Among those found in complicity were two employees, Rosemary Race who worked with appliance delivery records and salesman M., and Betty Sue Elbert, a customer.[4]

---

3. This complaint is directed to elements 4 and 5 of the traditional statement of the cause of action for malicious prosecution and to elements 1 and 2 of the Restatement expression of the principle. MAI 23.07, which submitted the issue to the jury, also reduces the more composite traditional statement to three propositions.

4. Ms. Race and the customer Elbert were confirmed in the fraud; Race was convicted and sentenced; the testimony of the Boring's comptroller definitely places Elbert in the scheme, but no disposition as to her is shown. The name of salesman M. appeared on about 75% of the appliance transactions involved in the fraud, but there is no clue as to his personal involvement.

It happened that when the Youngs made the purchase and security agreement on June 28, 1969, for the range, refrigerator and television set, the contract—for some reason—was written up as a COD order with a July 5 delivery date. The name of M. appeared on the security agreement as the salesman for the transaction. Young testified that when these items were purchased they were about to move from one address to another so his wife instructed Boring's to place them on will call. Young also informed Boring's that the purchase would be made through a finance company. When Boring's attempted to deliver the appliances in July, the Youngs were in the process of changing residences and so requested that the property be held until the move was completed. The Boring's warehouse delivery schedule for July 5, 1969, contained an entry with the name Lee Young and the three sales items and a notation [later determined to be in the hand of Rosemary Race] "cust wanted to put in W.C. [will call] till he move". On that same schedule also appeared the name of customer Betty Sue Elbert and a description of merchandise to be delivered to her. The next month, in August, Ms. Young returned to Boring's and re-ordered a range, refrigerator and television set with the purchase price increased from the original $1053.10 to $1290. The security agreement for these purchases, dated August 21, 1969, called for delivery to the new Young address and instructed that the purchase price be added to the current Young account with GECC. Delivery was made and the Youngs began to make payments to GECC which had purchased the contract from Boring's for the unpaid balance of $1290 plus insurance.

It is the contention of Boring's that the duplicated delivery of the merchandise prompted the replevy of the merchandise. June Smith, assistant comptroller for the defendant, testified that prior to the commencement of the replevin action, an investigation aided by the FBI and local police revealed an internal scheme of fraud to obtain goods without payment. The plan centered around employee Rosemary Race who arranged the delivery of merchandise on an ostensible COD basis to her confederates, and then changed the records on the orders so that they could be received without payment. The comptroller contended that one reason why Boring's suspected Young as part of the fraud was because his name was on the July 5, 1969, warehouse delivery schedule [5] as a COD buyer and that another person on that schedule, Betty Sue Elbert, was known as an accomplice in the deceit. Another basis of suspicion against Young was that the notation on the delivery schedule—that he had refused the goods and placed them on will call until his move to another address—was in the hand of Ms. Race. It also happened that in all the fraudulent transfers, the delivery tickets for the transactions had been removed and were not in the business files where they were normally kept in numerical order. Neither could the delivery ticket for the June 1969 transaction [13587—the number on the security agreement] be found. The warehouse delivery schedule had entered the June purchase as a COD transaction, so Comptroller Smith searched the

5.

| WAREHOUSE DELIVERY SCHEDULE | | | | Date 7/5/69 |
|---|---|---|---|---|
| D.T.No. | Customer Name & Address | Merchandise Delivered | C.O.D. | Special Instructions |
| 1–13587 | Lee Young 5532 Wabash | Roper Gas 1329 W/H Ref. RJJ43 Zen.CTV Z 4507 1 stand | 1053.19 Avo. | Cust wanted to put in WC till he move |
| * | * * * | * * * | * * * | * |
| 1–13730 | Betty Sue Elbert 3513 Kensington | P. 5–412–62 Sofa, etc. | 494.40 | |

cash records for verification. Since that transaction had been superseded by the August purchase—but for some reason had not been cancelled by the salesman—the search for the payment of account 13587 was of course fruitless.

The combination of these factors—the names Race, Elbert and salesman M., the absence of a delivery ticket, the lack of payment on transaction 13587—led Boring's to conclude that Young was part of the fraudulent scheme.

Comptroller Smith testified that in all about 80 replevin suits were instituted to recover property purloined in the fraud, including goods received by Betty Sue Elbert.

The defendant concedes that the Youngs were not accomplices in the fraud and, as matter eventuated, the replevin action was mistakenly brought. The defendant insists, however, that diligent search of the records for some proof that Young had paid for the appliances, apparent coincidences of fraud which attended that transaction, and failure of the salesman to record that the June, 1969 purchase had been superseded by a later purchase, as a matter of law, constituted probable cause to commence the replevin action and defeat the claim for malicious prosecution.

■ The law allows redress for damages from the commencement or continuation of a prosecution without probable cause. *Hughes v. Aetna Insurance Co.,* 261 S.W.2d 942, 945[1–4] (Mo.1953); 52 Am. Jur.2d, Malicious Prosecution § 6. In a civil proceeding, probable cause consists of "such facts and circumstances as will warrant a cautious, reasonable and prudent man in the honest belief that his action and the means taken in prosecution of it are just, legal, and proper". *Woods v. Standard Personal Loan Plan, Inc.,* 420 S.W.2d 380, 384 (Mo.App.1967). Where the evidence of probable cause is in conflict the issue is for the jury and a submissible case has been made. In this assessment, the termination of the litigation in favor of the plaintiff, standing alone, does not conclusively establish absence of probable cause for the commencement or continuation of the original action. *Jones v. Phillips Petroleum Co.,* 186 S.W.2d 868, 875[10–11] (Mo.App.1945).

The plaintiffs submitted recovery on the theory that Boring's lacked probable cause in the *instigation,* not continuation, of the replevin action against them. The defendant argues that since antecedent to filing the replevin action it acted diligently on all information available, and all effort to verify the genuineness of the obligation disclosed nothing to augur a greater care than was taken, probable cause was established as a matter of law. This argument falsely assumes that a civil proceeding, as an element of malicious prosecution, commences when the petition is filed.

■ The early common law allowed an action for a civil prosecution brought maliciously and without probable cause irrespective of special damage beyond the expense of making defense. The later English practice awarded damages [including attorney fees] as well as costs designed to compensate the wrong committed by the party who first put the law vexatiously in motion in a civil proceeding, a remedy which became a substitute for the independent action for malicious prosecution. 52 Am.Jur.2d, Malicious Prosecution § 9. Thus the view developed that no cause for malicious prosecution of a civil proceeding was proved unless the civil process resulted in some special injury, not otherwise compensated as costs, as by arrest of the person or interference with property. 54 C.J.S. Malicious Prosecution § 12. Our courts rejected this development because under our practice the recovery of costs does not reimburse attorney fees, and have adopted the view that an action for malicious prosecution may be maintained where the original action was begun by civil summons alone, where that process results in some damage, even if only the expense of defense. *Smith v. Burrus,* 106 Mo. 94, 16 S.W. 881[1] (1891); *Brady v. Ervin,* 48 Mo. 533, 535 (1871).

■ The gist of a malicious prosecution action, as that remedy is now understood in our jurisprudence, is "putting legal process

in force regularly for the mere purpose of vexation or injury". 52 Am.Jur.2d, Malicious Prosecution § 2. In the case of an ordinary civil litigation, that means an action begun by a summons regularly served according to the requirements of law. *Brady v. Ervin*, 48 Mo. 533, 535 (1871); *State ex rel. Williams v. Berrey*, 492 S.W.2d 731, 734[1] (Mo. banc 1973); § 517.110, RSMo 1969. In those exceptional circumstances where the mere filing of the action defames person or property[6] and therefore some damage is presumed in law, the action is deemed commenced for the purpose of malicious prosecution even without service of process. See, Restatement of Torts, Wrongful Civil Proceedings, § 681.

The evidence clearly shows that before the constable served the Youngs at their home with summons or impressed the property under the writ of replevin, the plaintiffs insisted repeatedly that they owned the television set, that Boring's had no right to it, and that the property was a GECC account. All this, within the presence and hearing of office manager Richardson, occurred before the replevin suit was given force by the regular service of process and thus before the commencement of the action. A jury could have found that prudent and reasonable conduct would have prompted inquiry of GECC to verify the claim made by the Youngs that the account did not belong to Boring's. In two analogous cases, *McFarland v. Union Finance Company*, 471 S.W.2d 497 (Mo.App.1971) and *Woods v. Standard Personal Loan Plan, Inc.*, 420 S.W.2d 380 (Mo.App.1967), those sought to be charged as signatories on promissory note obligations denied by affidavit that the signatures were theirs. Notwithstanding, suit was filed. In each case termination of the suit was in favor of the defendant, and actions for malicious prosecution followed. The contentions were made that the evidence failed to prove want of probable cause. The holding of the court in *Woods*, l. c. 384[3], cited in *McFarland*, l.

c. 500[3], is applicable to our determination: "Under these circumstances the jury could well find a cautious, reasonable, and prudent person would take other steps to insure the Magistrate Court action was in fact brought against the proper party."

▇▇▇ The record before us is replete with other evidence which supports the findings of malice and want of probable cause in the instigation of the replevin action. For instance, according to Comptroller Smith the replevin action was brought because, among other indications, the name of the Youngs appeared on the July 5th warehouse delivery schedule along with Betty Sue Elbert, a customer known to have been involved in the fraud, and in conjunction with instructions made in the hand of Rosemary Race, an employee convicted for the fraud. It was conceded by Comptroller Smith, however, that Boring's knew before the replevin suit was filed that the four customers, other than Elbert and the Youngs, listed for delivery on the July 5th warehouse schedule were not involved in the fraud and that Rosemary Race had made entries on other delivery schedules which were in all respects bona fide. The evidence was conclusive that Race and salesman M., the Boring's employee accomplices, conducted many legitimate business transactions for the defendant during this period.

▇▇▇ One who institutes a prosecution is held not only to the knowledge he then has, but also to the relevant information a diligent inquiry would have disclosed before the machinery of the law was put in motion. *Hoene v. Associated Dry Goods Corporation*, 487 S.W.2d 479, 483[1–6] (Mo. 1972). Once want of probable cause is made out, the jury may infer malice; in this case, it may be presumed from the failure of the defendant to make suitable and reasonable inquiries concerning the ownership of the property taken. *Stubbs v. Mulholland*, 168 Mo. 47, 67 S.W. 650, 659[5, 6] (1902).

---

**6.** As in the case of a criminal information— *Carp v. Queen Ins. Co.*, 203 Mo. 295, 101 S.W. 78, 98[38] (1907)—or a petition for involuntary bankruptcy—*Wilkinson v. Goodfellow-Brooks Shoe Co.*, 141 F. 218, 219 (C.C.E.D.Mo., 1905); *McDonald v. Goddard Grocery Co.*, 184 Mo. App. 432, 171 S.W. 650, 654[6] (1914).

The jury returned for the plaintiffs $8,000 in actual and $25,000 in punitive damages. The defendant contends that these awards were so disproportionate to the actual damages proven as to demonstrate the bias and prejudice of the jury and require a new trial or, alternatively, a substantial remittitur of both elements of damages. This argument proceeds on the faulty assumption that actual damages in such an action are limited to the recovery of expenditures [in this case $350 paid for the defense of the replevin suit]. In an action for malicious prosecution, damages are recoverable for every element of the injury, including mental and physical suffering, injury to fame and reputation, and the general impairment of social standing. *Foley v. Union House Furnishing Co.*, 228 Mo.App. 1063, 60 S.W.2d 725, 728[1, 2] (1933). Additional elements of damage include injury to credit, deprivation of use of property, and actual loss and injury to property. 54 C.J.S. Malicious Prosecution § 112. And while there is no fixed relation between actual damages and an award of punitive damages, nor a fixed standard for their measurement, generally punitive damages must bear some relation to the injury and the manner of its infliction. *Beggs v. Universal C. I. T. Corporation*, 409 S.W.2d 719, 724[8–13] (Mo.1966).

It was the evidence that the incursion by the Boring's employees into the Young home caused the plaintiffs mental distress, physical discomfort and personal embarrassment. Young testified that the intruders invaded the privacy of the home, threatened his life and safety and called him a thief. These incidents elevated his blood pressure [corroborated by the ministrations of his wife, a licensed practical nurse.] Young admitted a condition of chronic high blood pressure and that he had suffered no permanent physical impairment from these events. Ms. Young said that the incidents caused her upset, hysteria and embarrassment with the neighbors who had seen the Boring's van and police car near the house. The intrusion so distracted her that she became enraged at the men and tore the antenna off the television set. The humiliation and degradation of the experience continues to be a source of anxiety to her.

Damages for humiliation, shame and mental anguish are elements of actual damages which cannot be measured precisely. *Mitchell v. Pla-Mor, Inc.*, 361 Mo. 946, 237 S.W.2d 189, 191[1] (1951). A plaintiff who has established the essential elements of the cause of action in a malicious prosecution case may recover for harm to his reputation and disgrace or distress necessarily resulting from that prosecution without specific proof of such injuries. 52 Am. Jur.2d, Malicious Prosecution § 187.

Our courts have considered the claim of an excessive verdict in two perspectives: 1) a verdict which is simply disproportionate to the proof of injury and which results from an honest mistake by the jury in assessment of the evidence and 2) a verdict whose excessiveness is engendered by trial misconduct and thus results from the bias and prejudice of the jury. A verdict of the first order may be corrected by an enforced remittitur and does not require a retrial. A verdict of the second order is prejudiced and can be redressed only by a new trial. *Bertram v. Wunning*, 417 S.W.2d 120, 125[4–6] (Mo.App.1967). The defendant contends the verdicts are excessive on both grounds.

As to the claim for a new trial because of jury bias and prejudice, the defendant argues that the "situation appears to be one where some exterior considerations have entered into the jury's deliberations and have caused it to award a disproportionately large amount of actual damages". These external factors are not identified, and the argument is reduced to a contention that the jury misconduct becomes evident from the size of the verdicts alone. While a trial court may competently weigh the evidence in a jury case and infer bias and prejudice from the size of the verdict alone, an appellate court may not, and thus will not determine jury prejudice without evidence of misconduct. *Nussbaum v. Kansas City Stock Yards Company of Maine*, 359 S.W.2d 335, 341[6] (Mo.1962). This point is denied.

The defendant argues alternatively for the remittitur of both actual and punitive damages. Those factors which bear on the determination of excessiveness of a verdict so as to require remittitur are well known: 1) the nature and extent of the injuries; 2) the permanency of the injuries; 3) the age of the plaintiff; 4) diminished earning capacity; 5) regard for variable economic factors; 6) comparison with awards for similar injuries (the rule of uniformity of verdicts) and 7) deference to the superior vantage of the jury and trial court to appraise the claim of injury. *Blond v. Overesch*, 527 S.W.2d 663, 672[10–12] (Mo. App.1975). Our recent opinion holds that the remittitur doctrine expresses a standard of reasonableness for verdicts determined in the light of these composite elements, among them the notion of uniformity with awards made for comparable injuries. *Ricketts v. Kansas City Stock Yards of Maine*, 537 S.W.2d 613 [Adopted May 3, 1976].

The defendant does not develop the rule of reasonableness nor mention the consideration of uniformity in argument, but application of these principles to other cases where substantial actual damages were awarded on evidence similar to that presented at trial [particularly as to the expenditure made necessary by the prosecution] requires that the claim for remittitur be denied. In *Carp v. Queen Ins. Co.*, 203 Mo. 295, 101 S.W. 78 (1907) the plaintiff claimed injury and disgrace to his reputation from a criminal prosecution for arson brought without justification. An award of $12,500 was upheld where the only expenditure was $212 paid to counsel for defense of the criminal charge. *Huffstutler v. Coates*, 335 S.W.2d 70 (Mo.1960) allowed recovery of $7000 actual damages for the malicious prosecution of an arson charge, where the only expenditure was $500. See, also, *Coffman v. Shell Petroleum Corporation*, 228 Mo.App. 727, 71 S.W.2d 97 (1934); *Randol v. Kline's, Inc.*, 330 Mo. 343, 49 S.W.2d 112 (1932) and *Irons v. American Ry. Express Co.*, 318 Mo. 318, 300 S.W. 283 (banc 1927). In each of these cases, the actual damage award rested on the mental anxiety caused by the disgrace and humiliation of the malicious prosecution. We remarked in *Boquist v. Montgomery Ward & Co., Inc.*, 516 S.W.2d 769, 777[20] (Mo.App.1974) that "disgrace is a relative term and that the law has determined that the jury shall decide the question". The law concedes a wide latitude of discretion to the jury in such actions and, on this record, we have no cause to question its exercise.

The defendant contends for remittitur of punitive damages also. The award of such damages is so peculiarly committed to the jury discretion that only in an extreme case will the appellate court interfere. *Hoene v. Associated Dry Goods Corporation*, 487 S.W.2d 479, 486[14–16] (Mo. 1972). An abuse of discretion in this reference means an award so out of all proper proportion to the evidence as to reveal improper motives or a clear absence of the honest exercise of judgment, *Beggs, supra*. The purpose of punitive damages is to punish wrongdoing and to discourage similar conduct by others. *Beggs, supra*, l. c. 724. In this case, the malice of the defendant was not only inferable from the determination of want of probable cause but was aggravated by the wanton direction by office manager Richardson to the constable, contrary to his public duty, to return the replevin summons *non est* when in fact service had been perfected upon the Youngs according to law. The jury could have understood this devious conduct as an acknowledgment that the replevin action was commenced in bad faith. The award of $25,000 punitive damages was not excessive.

The defendant insists that the trial court applied the incorrect standard to the grounds of the motion for new trial which asserted: "1) the verdict is excessive and should be remitted, and 2) the verdict is the result of bias and prejudice on the part of the jury". The court ruled these grounds of the motion by order which recited, inter alia, "that the verdict was not so high as to indicate bias and prejudice on the part of the jury. Remittitur is therefore denied". The defendant contends that the ruling in-

termingles two separate standards, mere excessiveness requiring remittitur and bias and prejudice requiring a new trial. The order of the court, in full text, explicitly recites and considers each separate ground and fully distinguishes excessiveness as a predicate for the grant of a remittitur or a new trial. The point is without merit.

■ The defendant next asserts that the trial court erred in the submission of Instructions 6 and 7 because vague, misleading and indefinite. These instructions are taken directly out of MAI. Instruction 6 renders MAI 10.01 on exemplary damages, and Instruction 7 is the MAI 16.01 definition of legal malice, required by MAI 23.07 to be used in a malicious prosecution submission. The principles of law expressed in MAI 10.01 and 16.01 have been confirmed repeatedly. This point is without merit.

■ The defendant also assigns as error forms of verdict Instruction No. 10 on the contention that it joins and submits the separate claim of Ms. Young in Count II of the amended petition [for loss of consortium] with the joint claim of the Youngs under Count I. This argument overlooks that Count II for loss of consortium was dismissed with prejudice by the plaintiffs. Only the joint claim of the Youngs for malicious prosecution was submitted to the jury and directed the alternatives allowed by law under proper forms of verdict.

■ The final contention of error is that the trial court should have sustained objection to the closing argument of the Young attorney:

Now it is easy for Mr. Myerson [counsel for Boring's] to sit in his office and say well, this isn't any big deal. That's because it didn't happen to him in his home.

The plaintiff argues that these remarks were retaliatory. We are satisfied, as was the trial judge who considered the objection at the trial and on the new trial motion, that no prejudice resulted to the defendant from the comment. The trial judge exercised a lawful discretion in the denial of the objection. *Humes v. Salerno*, 351 S.W.2d

749, 754[3–5] (Mo.1961); *Cook v. Cox*, 478 S.W.2d 678, 682[8–11] (Mo.1972). The defendant contends that the plaintiffs improperly argued the size and corporate status of Boring's. No objection appears at the transcript reference given by the defendant on this point, nor was the issue preserved in the motion for new trial. In any event, the jury is entitled to consider the wealth or financial condition of a defendant on the issue of punitive damages, *Beggs, supra*, l. c. 724.

The judgment is affirmed.

All concur.