Carl FUST and Rita Fust,
Plaintiffs/Respondents,

v.

David FRANCOIS, an individual, and But-
ler Hill Investment, Inc., a Missouri cor-
poration, Defendants/Appellants.

No. 66740.

Missouri Court of Appeals,
Eastern District,
Division Three.

Oct. 10, 1995.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Nov. 20, 1995.

Application to Transfer Denied
Jan. 30, 1996.

Thomas C. Walsh, Mark B. Leadlove, Frank N. Gundlach, Thomas Blumeyer Weaver, St. Louis, for appellants.

Richard C. Witzel, David A. Dimmitt, Alan G. Kimbrell, St. Louis, for respondents.

RHODES, Judge.

Defendants David Francois and Butler Hill Investment, Inc.[1] appeal from a judgment in favor of Plaintiffs Carl and Rita Fust in the sum of $500,000 and $600,000, respectively, after remittitur. The Fusts sued Francois for malicious prosecution arising out of an earlier suit filed by Francois against the Fusts for trespass, defamation and harassment. On appeal, Francois asserts six points of error. We affirm.

This case involves a long-running dispute between two abutting property owners. A rendition of the facts pertinent to the issues on appeal follows. Carl and Rita Fust owned and occupied a parcel of land in South St. Louis County. They owned this property as tenants by the entirety since April 1979. David Francois, the president of Butler Hill Investment, Inc., owned a large portion of the property adjoining the Fusts' land. Francois was a real estate investor and Butler Hill Investment, Inc. was the company formed to complete the commercial tract.

The animosity started between the parties in 1980 when Francois sought permission to develop 29–30 acres of his property from the St. Louis County. Francois wished to build a $40 million commercial development and requested the rezoning of the property from residential to commercial use. The Fusts did not want the proposed development and actively campaigned against it by circulating petitions and speaking at council meetings. Francois' rezoning proposal was eventually rejected in 1981.

The portion of Francois' property at issue entails two lots, lots 7 and 8, which adjoin only at a point. In between the two lots lies the Fust property. The pictures admitted at trial show lots 7 and 8 as undeveloped land, strewn with garbage and containing piles of cement blocks and other debris.

In 1988, Francois offered to purchase a portion of the Fusts' back yard so he could then run equipment between lots 7 and 8. If Francois owned the back portion of the Fusts' property, he would then be able to remove dirt from lot 7 and deposit it to fill the sinkholes on lot 8 using a belly-scraper, which would save anywhere from $90,000 to $135,000. To negotiate the purchase Francois had a real estate agent talk with the Fusts. He offered the Fusts $25,000 for the parcel, which the Fusts refused.

The Fusts later received a letter signed by Beverly Luko, an accountant for Francois. The letter informed them of the plans to fix-up the property and warned of possible adverse affects of sinkholes on adjoining property. The letter further gave the Fusts warning of future legal problems and suggested they consider liability insurance. Taking the letter seriously, the Fusts wrote to the St. Louis County Department of Planning, attaching a copy of the letter and asking them to look into the matter.

Thereafter in January 1990, Francois had his property surveyed and the property marked with posts for the purpose of building a fence. The Fusts did not necessarily oppose the building of the fence, but did not like its location so close to the property lines and did not wish it to be painted white as Francois proposed. The Fusts voiced their concerns and displeasure in a letter dated January 31, 1990 and sent it to Francois. Copies of the letter were also sent to council members and neighboring property owners.

Concerned about the contents of the Fusts' letter, Francois sought advice from an attorney, J. Patrick Winning. Francois and Winning went out to the property on March 20, 1990 and observed two or more piles of yard waste, rocks and other debris. Winning testified that it was Francois who identified Carl Fust as the one who put the trash on the property. Winning also testified Francois

1. David Francois was the sole shareholder of Butler Hill Investment, Inc. For simplicity, we will hereinafter refer to Defendants jointly as "Francois".

noticed some survey stakes missing and that Francois thought Fust had removed the stakes from the property.

On April 2, 1990, Winning, on behalf of Francois, filed a three count petition against Carl Fust. Count I asserted Fust had, on or about January 1990, entered Francois' property without permission and deposited trash and other debris and removed surveying stakes, and prayed for damages in excess of $150,000. Count II alleged Fust had defamed Francois by writing a letter, dated January 31, 1990, to Francois and circulating it to others for the purpose of embarrassing Francois and forcing Francois to purchase the Fust property at an inflated price or prevent Francois and his company from developing the property. Count II prayed for compensatory damages in excess of $150,000 and punitive damages of $250,000. Lastly, in Count III, Francois claimed Fust harassed them by writing the aforementioned letter to Francois and by inciting other neighbors to make complaints against Francois and the proposed development. Count III requested $150,000 in compensatory damages, $50,000 for mental anguish, and $250,000 in punitive damages.

Upon request for a more definite statement, Count I was amended to plead the specific dates of the supposed trespass. The amended pleading stated the occurrence dates as January 14, 1990 and January 21, 1990. Francois also specifically pled that Fust entered the property on March 17, 1990 and destroyed the survey stakes. Count III for harassment was dismissed upon motion for failing to state a cause of action.

In November 1990, Francois made a settlement offer to Fust asserting five preconditions. The preconditions included writing a letter of apology, refraining from actively campaigning against the development, and paying Francois $25,000. Fust rejected the offer.

On December 6, 1990, a second amended petition was filed by Francois to add Rita Fust as a party to Count I for trespass. It prayed for damages against both Carl and Rita Fust in excess of $150,000.

On March 16, 1992, the case was dismissed for Francois' failure to comply with discovery requests. Shortly after the case was dismissed, Francois sent a letter to the Fusts stating that he was aware they were again slandering his name and dumping items on his property. Francois demanded it stop and threatened them to "not make a second lawsuit necessary," which would "be much more costly" and have "a much different ending."

On July 20, 1992, the Fusts filed the instant action against David Francois and Butler Hill Investment for malicious prosecution. The matter was tried on April 11, 1994, with Francois not present.[2] At trial, the issues of liability and punitive damages were bifurcated. At the close of the liability phase, the jury returned a verdict in favor of Carl for $500,000 and Rita in the amount of $600,000 jointly and severally against Francois and Butler Hill Investment. The punitive damages phase similarly favored the Fusts. Carl was awarded $375,000 in punitive damages against each Defendant, and Rita was awarded $450,000 in punitive damages against each Defendant. Francois' after-trial motion for remittitur was granted, and the court reduced Carl Fust's compensatory damage award to $200,000 jointly and severally and punitive damage award to $150,000 against each Defendant. Rita Fust's judgment, on the other hand, was reduced to $240,000 jointly and severally for compensatory damages and to $180,000 against each Defendant in punitive damages. This appeal followed.

I. Submissibility—Lack of Probable Cause

■ For the first point on appeal, Francois asserts the trial court erred in denying his motions for directed verdict and J.N.O.V. He argues the verdict should have been in his favor because the Fusts failed to make a submissible case of malicious prosecution. To succeed in an action for malicious prosecution, the plaintiff has the burden of showing the following: (1) commencement of an earlier suit against plaintiff; (2) instigation of the suit by defendant; (3) termination of the suit in plaintiff's favor; (4) lack of probable cause for the suit; (5) malice by defendant in

---

**2.** Appellate counsel did not represent Francois at the trial level.

instituting the suit; and (6) damage to plaintiff resulting from the suit. *State ex rel. Police Ret. Sys. v. Mummert,* 875 S.W.2d 553, 555 (Mo. banc 1994). Francois argues the Fusts failed to satisfy the fourth element.

■ Probable cause for initiating a civil suit means "a belief in the facts alleged, based on sufficient circumstances to reasonably induce such belief by a person of ordinary prudence in the same situation, plus a reasonable belief by such person that under such facts the claim may be valid under the applicable law." *Haswell v. Liberty Mut. Ins. Co.,* 557 S.W.2d 628, 633 (Mo. banc 1977). Proving the want of probable cause involves proving a negative, therefore, the slightest of proof is all that is required to make a prima facie case. *Id.* If there is no dispute about the facts of a claim for malicious prosecution, the existence of probable cause is a question of law for the court, not a question of fact for the jury. *Mummert,* 875 S.W.2d at 555.

■ Here, although Francois argues otherwise, there were factual disputes which were for the jury to decide. The Fusts denied the allegations of entering the property in 1990, dumping materials on the property and taking out stakes. Also in dispute was the idea Francois sued to pressure the Fusts into selling the property or pressure them into accepting the commercial development. These were matters for the jury to determine.

■ Looking at the evidence as a whole in the light most favorable to the Fusts, there was sufficient evidence to support a lack of probable cause on the part of Francois in bringing the case against the Fusts for trespass. As a preliminary matter, we note the disposition of the action. Francois' case against the Fusts was dismissed by the court. The case had been pending for almost two years. For purposes of establishing a claim for malicious prosecution, dismissal of the defendant's action against the plaintiff is some evidence of a lack of probable cause, but not alone sufficient. *Haswell,* 557 S.W.2d at 633.

Further support for a finding of the lack of probable cause exists in the record. The amended petition alleged the Fusts "on or about January 14, 1990, and January 21, 1990, without authority, license or permission ... entered [the] property and thereupon did deposit trash ..." and further alleged the Fusts "on or about March 17, 1990, without authority, license, or permission ... entered [the] property and thereupon did remove, damage, and destroy survey stakes...." The malicious prosecution case proceeded under the theory that Francois did not have probable cause for advancing a trespass claim against the Fusts for those specific dates.

To resolve the issue of probable cause to bring the trespass action, the key question to ask is whether Francois held a reasonable belief in the facts alleged—a belief which a person of ordinary prudence would hold under the circumstances—and whether Francois held a reasonable belief that under those facts a valid claim for trespass may be made. *Haswell,* 557 S.W.2d at 633. Framing the issue in that manner, it is evident Francois made only a minimal attempt to gather the facts and legitimate his claim thereby making his belief unreasonable.

In his deposition testimony, which was read to the jury, Francois stated that he sued Carl Fust because he was throwing trash on the property. Though Francois stated he had seen both Mr. and Mrs. Fust throw items over the fence onto his property on several occasions, he was unable to provide details of what was thrown over or give specific quantities or descriptions. In addition, Francois was never able to give specific dates of these occurrences, nor was he able to produce any records showing when and where the Fusts dumped items onto the property. Francois admitted there were other persons, including builders and other landowners, who had been near the property and had deposited waste and other items onto his lot, but could not remember whether he had filed suit against those others for trespass or damages.

■ In their deposition and trial testimony, the Fusts admitted they had entered onto Francois' property back in November of 1987 and deposited some branches. The Fusts

conceded they dumped two or three wheelbarrow loads of branches and debris onto a stack of cement blocks in 1987, but denied ever entering Francois' property in 1990 or depositing anything on the property in 1990. Francois relies on the Fusts' confession and attempts to use their admitted trespass from 1987 as a basis for his 1990 trespass claim. Such reasoning, however, is flawed. Persons filing a lawsuit are held responsible for the facts known to them at the time of filing and also for all other facts ascertainable through due diligence. *Zahorsky v. Griffin*, 690 S.W.2d 144, 151 (Mo.App.1985). At the time Francois made the decision in 1990 to sue the Fusts for trespass, no one was aware of the 1987 incident. It was not until the Fusts were deposed that that information came out, which took place after the litigation was initiated.

Evidence existed in the record that Francois was rather lax in his investigation and record keeping of the subject events. Francois was unable to relay what efforts he made to investigate the incidents and could not produce any documents to that effect either. The circumstances of the instigation of the suit were suspect, and the jury could believe that Francois had insufficient knowledge to justify instituting the action.

There was also evidence to support a finding of the lack of probable cause for pleading an amount of damages exceeding $150,000. Looking at the record, the likelihood that Francois could prove over $150,000 worth of damage to the property attributable to the Fusts is doubtful. The pictures admitted into evidence and presented to the jury show the property as overgrown and cluttered with piles of debris. Large cement blocks are visible, looking much like a landfill. When questioned about the damage to the property, neither Francois nor his attorney from the underlying action could specify the damage or offer particular quantifications. Though there was evidence that others had deposited items on the property at earlier times, no effort was made to try and trace what entities deposited what items, the degree of damage, and the cost of such damage. Based on these facts, there was sufficient evidence of a lack of probable cause. *See*

*Wetherill v. Hunt*, 834 S.W.2d 199, 203 (Mo. App.1991). Point one is denied.

## II. Submissibility of Rita Fust's Claim—Commencement and Termination

In their second point, Francois asserts the trial court erred in denying the motions for directed verdict and J.N.O.V. with respect to Rita Fust's claim and in denying the motion to set aside the verdict in her favor because the cause against Rita Fust was never commenced against her. Francois argues the case against Rita Fust never began because she was never served with process. In the alternative, Francois maintains her judgment should be set aside because the case was never terminated in her favor in that the court only dismissed the case as to Carl Fust.

These issues, however, were never mentioned in Francois' motion for directed verdict, which was made orally to the court. It is well-established that when a motion for directed verdict does not include the specific reasons or grounds for the motion, it is insufficient to preserve the issue for appellate review. *Dierker Associates, D.C. v. Gillis*, 859 S.W.2d 737, 743 (Mo.App.1993); *Kincaid Enterprises, Inc. v. Porter*, 812 S.W.2d 892, 895 (Mo.App.1991). Likewise, a motion for J.N.O.V. is properly preserved only when a sufficient motion for directed verdict has been made at the close of all the evidence. *Dierker*, 859 S.W.2d at 743. When there is an insufficient oral or written motion for a directed verdict, a post-verdict motion for J.N.O.V. is without basis and preserves nothing for appellate review. This court may, however, review the unpreserved issues for plain error affecting substantial rights under Rule 84.13(c). *Id.* We will interfere with the judgment under the plain error doctrine when we find that manifest injustice or a miscarriage of justice has resulted. Rule 84.13(c).

One of the prima facie elements for malicious prosecution is that an action be commenced against the plaintiff. *Mummert*, 875 S.W.2d at 555. Francois argues Rita Fust failed to make a submissible case in that there was no underlying trespass action "commenced" against her because she was never served with process. We disagree.

Rule 53.01 provides that "[a] civil action is commenced by filing a petition with the court." This provision previously read "[t]he filing of a petition and suing out of process therein shall be deemed the commencement of a civil action." V.A.M.R. Rule 53.01, Historical Note. The requirement of proper service of process was omitted in 1972 and the Missouri Supreme Court has rejected any subsequent attempts to impose a service requirement to the rule. *See Ostermueller v. Potter,* 868 S.W.2d 110, 111 (Mo. banc 1993). *See also Richardson v. Richardson,* 892 S.W.2d 753, 756 (Mo.App.1994). Based on the express language of Rule 53.01, a cause is commenced upon filing the petition. Because the Second Amended Petition did name Rita Fust as a party defendant and was filed with the court, and in light of all the circumstances, the action was "commenced" against her for purposes of satisfying the elements of malicious prosecution. Furthermore, whether a named party to the action is properly served with process is a jurisdictional issue and the right to challenge such jurisdiction is conferred on that party alone who has the right to consent to jurisdiction or waive the objection to personal jurisdiction. *State ex rel. Tinnon v. Mueller,* 846 S.W.2d 752, 754 (Mo.App.1993). Here, where Rita Fust had not challenged service or contested personal jurisdiction throughout the litigation, the court had jurisdiction over Mrs. Fust through her consent or waiver. Francois cannot now on appeal try to benefit from the procedural error he himself made in the earlier suit by challenging the "commencement" prong of submitting the subsequent malicious prosecution suit.

Francois further argues that Rita Fust did not meet the "termination" prong. To make a submissible case of malicious prosecution, the earlier action must have terminated in the plaintiff's favor. *Mummert,* 875 S.W.2d at 555. We need not analyze the specific acts and motions leading up to the dismissal of the underlying trespass action because, irrespective of the language used in the dismissal order, we find that the issue of termination of the trespass suit against Carl and Rita Fust was established through Francois' own admission at trial. In the opening statement, counsel for Francois stated that it was undisputed that the action was filed against both Carl and Rita Fust and that the whole action was dismissed against them. Counsel reiterated that it was dismissed for reasons unrelated to the merits of the claim and that the lawsuit was over. An unequivocal admission in counsel's opening statement constitutes a judicial admission which is conclusive on the issue being admitted. *Smith v. Whalen,* 613 S.W.2d 868, 870–71 (Mo.App. 1981). *See also DeArmon v. City of St. Louis,* 525 S.W.2d 795, 799 (Mo.App.1975). A judicial admission is an act by a party which in effect concedes a point to be true for purposes of the judicial proceeding and which acts as a substitute for evidence and obviates the need to present evidence on the matter. *Sheffield Assembly of God v. American Ins.,* 870 S.W.2d 926, 931 (Mo.App. 1994).[3]

We construe defense counsel's statements with regard to the lawsuit's dismissal as a judicial admission. Francois therefore waived any right to challenge the issue. Point two is denied.

### III. Collateral Source of Attorney Fees

Francois next alleges the trial court erred in sustaining the motion in limine excluding any testimony to show that the Fusts did not pay any attorney fees in defending the underlying action.

At the time the trespass action was pending, the Fusts were covered through a policy issued by their liability insurer for one million dollars in liability coverage. The liability insurer hired a private law firm to defend the suit instituted by Francois. The services rendered by the firm totaled $6,538.65, which amount was paid in total by the insurer. Francois argues on appeal that he should have been allowed to tell the jurors the liability insurer paid the fees and that the Fusts paid nothing in attorney fees and thereby refute the Fusts' claim for damages.

---

**3.** It is noteworthy that the Fusts' verdict-director did not include any reference to finding the cause against Rita Fust terminated in her favor and Francois made no objection to the verdict-director as proposed.

The Fusts argue this issue was not properly preserved because Francois did not make an offer of proof at trial. Assuming, without deciding, a sufficient offer was made, we find the court did not abuse its discretion in ruling the evidence inadmissible. The use of the collateral source rule was recently articulated by the Missouri Supreme Court in the case *Washington v. Barnes Hosp.*, 897 S.W.2d 611 (Mo. banc 1995). In *Washington*, the Supreme Court had to consider the issue of whether the defendants in a medical malpractice case could bring forth evidence of the availability of free public special education. Defendants argued such evidence did not fall within the collateral source rule, and the court agreed. The court thoroughly reviewed the case law applying the collateral source rule and the underlying reasons for its application. One reason identified by the court and which applies to the present case is the "benefit of the bargain" rationale, *i.e.* the plaintiff who contracts for insurance with his or her own funds should receive that benefit without it being disclosed. *Id.* at 619. The common rationale for the rule is that "a wrongdoer is not entitled to have the damages to which he is liable reduced by proving that plaintiff has received or will receive compensation or indemnity for the loss from a collateral source, wholly independent of him, or, stated more succinctly, the wrongdoer may not be benefited by collateral payments made to the person he has wronged." *Id.* at 619 (quoting *Collier v. Roth*, 434 S.W.2d 502, 506–07 (Mo.1968)).

■ Francois argues the evidence was not meant to get an offset or credit against damages but to rebut the Fusts' claim of the existence of damages—the fact of damages. It is well-settled that damages need not be proved with exact certainty, but rather it is the fact of damages, not the amount of damages, that must be proven with reasonable certainty. *Layton v. Pendleton*, 864 S.W.2d 937, 941 (Mo.App.1993).

■ In the malicious prosecution context, there was testimony concerning the services of the law firm and the amount of those services. Such testimony is sufficient evidence of damages. Whether the Fusts were the ones who in fact paid the law firm direct-

ly for the services is irrelevant. Point three denied.

## IV. Evidence of Emotional Distress

■ In his point four, Francois claims the trial court committed plain error in allowing the jury to hear evidence of Carl and Rita Fust's emotional distress and allowing them to recover damages therefor when they offered no expert testimony that their supposed distress was medically diagnosable. Having presented no expert testimony on the subject, Francois argues Fusts' evidence of damages was speculative, conjectural and insufficient to support the verdict.

■ Francois acknowledges his failure to object to the offering of evidence concerning the Fusts' emotional distress and realizes the point was therefore not properly preserved for appeal. Nor was the issue preserved in his motion for directed verdict. Francois does, however, request plain error review under Rule 84.13(c). Under plain error review, this court determines whether plain error was committed affecting substantial rights which resulted in manifest injustice or miscarriage of justice. Rule 84.13(c).

Recovering for emotional distress in the context of a malicious prosecution suit was first addressed in the case *Young v. Jack Boring's, Inc.*, 540 S.W.2d 887, 897 (Mo.App. 1976). In *Young*, plaintiffs brought suit for malicious prosecution arising from an underlying replevin action instigated by defendants. In affirming the judgment in plaintiffs' favor, the court made known that, in actions for malicious prosecution, damages are recoverable for every element of the injury, including mental and physical suffering, injury to fame and reputation, and impairment to social standing. *Id.* at 897. The court further noted that damages for humiliation, shame and mental anguish are elements of actual damages that are not subject to precise measurement. *Id.* When the elements of a cause of action for malicious prosecution have been established, the court held that the plaintiffs may recover for harm to their reputation and disgrace or distress necessarily resulting from that prosecution with-

out specific proof of such injuries. *Id.* (citing 52 Am.Jur.2d, Malicious Prosecution § 187).

The Missouri Supreme Court then decided the case *Bass v. Nooney Co.*, 646 S.W.2d 765 (Mo. banc 1983), in which the court did away with the old impact rule for cases of emotional distress. Therein, the plaintiff tried to recover for negligent infliction of emotional distress due to her getting stuck in an elevator. The Supreme Court discussed the history of the old impact rule and decided the old bases for the rule were no longer supportable. It articulated a new standard, allowing recovery for a plaintiff for emotional distress if (1) the defendant should have realized the conduct involved an unreasonable risk of causing distress; and (2) the distress is medically diagnosable and so severe as to be medically significant. *Id.* at 772–73.

Francois urges that, based on the holding in *Bass,* the Fusts were required to bring forward expert medical testimony to substantiate their claim for mental and emotional distress. However, a short time after *Bass* was decided, the Western District of this court issued the case *Lipari v. Volume Shoe Corp.,* 664 S.W.2d 953 (Mo.App.1983).

In *Lipari,* a customer sued a shoe store for malicious prosecution arising from an underlying shoplifting charge. In affirming the judgment in the customer's favor, the court rejected defendant's claim that plaintiff needed to present medical testimony to support her claim. The court reasoned: "It requires no medical testimony to connect [customer's] conditions—nervousness, anxiety, sleeplessness, tearfulness [sic]—to the arrest and prosecution, and they would in fact be the natural and expected consequences of the indignity which she suffered." *Id.* at 958. In support of that reasoning the court cited *Young,* supra, and *Hupp v. North Hills Lincoln–Mercury,* 610 S.W.2d 349, 356–57 (Mo. App.1980).

In *Hupp,* the purchaser of a car brought a malicious prosecution case against the dealer after the dealer had instituted fraudulent check charges against him. The *Hupp* court affirmed a $25,000 award in purchaser's favor and stated that the plaintiff need not prove such special damages as defamation, shame, humiliation and mental anxiety, which the court noted were not subject to precise measurement in terms of dollar amounts. *Id.* at 356. Rather, the court commented that the jury was to be accorded wide discretion in determining the amount of damages. *Id.*

In further support the Fusts cite the case *Signorino v. National Super Markets,* 782 S.W.2d 100 (Mo.App.1989), decided by this court. In *Signorino,* plaintiff sued the supermarket for false arrest arising from the market falsely constraining him and accusing him of theft. The opinion discussed *Bass* and held that *Bass* was distinguishable because it involved a negligence action. *Id.* at 104. The *Signorino* court made a distinction for intentional tort cases. When an intentional tort is involved, the court ruled there is no need to use the *Bass* standard, and the jury is free to consider such damages as embarrassment, humiliation, disgrace and mental suffering without medical proof thereof. *Id.*

■ Here, there was no objection to the introduction of evidence of mental anguish and suffering. Testimony was presented from both Carl and Rita Fust concerning the emotional impact of being sued by Francois. The defense did not refute the accuracy of the Fusts' claims and presented no contradictory expert evidence on the subject. Further, no request for physical or mental evaluations was made. Based on the foregoing case law, we find no error, plain or otherwise, in allowing such evidence. In the context of a malicious prosecution case, like the one at hand, damages for mental distress are recoverable and may be presumed to flow from the malicious prosecution without the need for medical testimony. *See generally* Jay M. Zitter, Annotation, *Excessiveness or Inadequacy of Compensatory Damages for Malicious Prosecution,* 50 A.L.R.4th 843, 854–56 (1986). Point four is denied.

## V. Excessiveness of Compensatory Damages

■ In his next point, Francois alleges the trial court erred in denying his motion for new trial or refusing to reduce the amount of compensatory damages further than that granted by remittitur.

In general, the determination of damages is primarily for the jury. *Bishop v. Cummines*, 870 S.W.2d 922, 923 (Mo.App. 1994). The trial court's reduction of the jury award by remittitur constitutes a ruling upon the weight of the evidence. *Id.* Remittitur is appropriate "if, after reviewing the evidence in support of the jury's verdict, the court finds that the jury's verdict is excessive because the amount of the verdict exceeds fair and reasonable compensation for plaintiff's injuries and damages...." § 537.068 RSMo 1994. The trial court has broad discretion in ordering remittitur and its decision to reduce the damages will not be disturbed on appeal absent an abuse of that discretion. *Meyer v. McGarvie*, 856 S.W.2d 904, 908 (Mo.App.1993). The court will interfere only when the verdict is so grossly excessive that it shocks the conscience of the court and convinces the court that both the jury and the trial court abused their discretion. *Rusk Farms, Inc. v. Ralston Purina Co.*, 689 S.W.2d 671, 682 (Mo.App.1985). We will exercise our power to interfere with the judgment of the jury and trial court with caution and only when the verdict is manifestly unjust. *Id.*

The jurors in this case awarded Carl Fust $500,000 and Rita Fust $600,000 in compensatory damages. The trial court then reduced those amounts by 60 percent to $200,000 and $240,000, respectively.

Francois nonetheless asserts the damages are grossly excessive in that (1) they are disproportionate to the Fusts' proven injuries; (2) they are disproportionate to awards given in comparable cases; and (3) they evidence passion and prejudice on the part of the jury. If the verdict is excessive under number three, then the judgment is severely prejudiced and can only be addressed through a new trial. *Young*, 540 S.W.2d at 897. Such relief is only available upon a showing that trial error incited prejudice in the jury. *Larabee v. Washington*, 793 S.W.2d 357, 359 (Mo.App.1990). The amount of the verdict alone is not sufficient proof that the verdict was a result of bias, passion or prejudice, for the complaining party must show that there was some trial error or misconduct of the prevailing party which prejudiced the jury. *Id.* Francois has not specified any trial error or misconduct sufficient in severity to require a new trial.

The other two grounds for finding the award excessive, *i.e.* the disproportionality arguments, can be analyzed together. Where the jury errs by awarding a verdict which is simply too bounteous under the evidence, the result can be corrected by ordering a remittitur. *Id.* A new trial need not be ordered because the jury is not guilty of misconduct, only an honest mistake as to the nature and extent of the injuries. *Id.*

Considering the deference given jurors and the trial judge in such cases, we do not find the verdict manifestly unjust. Francois cites a long list of cases and compares the awards in those cases with that of the Fusts' and calculates how much the Fusts' damage award exceeds other awards. As the Fusts aptly note in their brief, none of the cases cited by Francois involve the reversal of a case because of the excessiveness of a remitted amount. The issue of the excessiveness of a jury award is one uniquely for the trial court when confronted with the remittitur and new trial motions. Under the facts and circumstances of this case, we find no reason to interfere.

The doctrine of remittitur is intended to produce equitable compensation and to eliminate the retrial of lawsuits. *Bishop*, 870 S.W.2d at 924 (citing Final Report of the Missouri Task Force on Liability Insurance, January 6, 1987). In *Bishop*, the Western District went through the history of the doctrine and analyzed thoroughly the development of additur and remittitur. As the *Bishop* court points out, the doctrine, as part of the Tort Reform Act, was meant to avoid retrying lawsuits. Remittitur gives the defendants what they want and, instead of granting a new trial, the court avoids the waste of judicial resources and delay by awarding an amount it finds fair. *See id.* at 924 n. 2. These policy reasons further support affirming the judgment as remitted. Point five is denied.

## VI. Submission of Punitive Damages Instruction and Excessiveness of Punitive Damage Awards

In his last point, Francois argues the amounts of punitive damages are excessive. Francois claims the punitive damage awards are grossly excessive, represent multiple punishments for the same act, are substantially disproportionate to the injuries sustained and to damages in other cases, and are a product of the jury's passion, prejudice, speculation, conjecture and misinformation. Francois asserts there was insufficient evidence to support a finding of actual malice and that the jury had *no basis or guidance in* evaluating the issue of punitive damages, thereby violating due process. We disagree.

The jury initially awarded Carl Fust $375,000 in punitive damages against each defendant and Rita Fust $450,000 in punitive damages against each defendant. The trial judge again remitted those awards by 60 percent to $150,000 in punitives against each defendant for Carl Fust and $180,000 in punitives against each defendant for Rita Fust.

 First, Francois argues that the Fusts did not prove the malice required for punitive damages. The Missouri Supreme Court has announced three categories of malice: (1) actual malice, which means ill will, spite, personal hatred, or vindictive motives; (2) legal malice, which embraces any improper motive; and (3) malice in law, which is defined as a wrongful act done intentionally without just cause or excuse. *Proctor v. Stevens Employment Services, Inc.,* 712 S.W.2d 684, 686 (Mo. banc 1986) (quoting in part *Sanders v. Daniel Int'l Corp.,* 682 S.W.2d 803, 807–08 (Mo. banc 1984)). To prove a prima facie case of civil malicious prosecution, the plaintiff must show malice in law. *Id.* at 687. Malice in law rests upon a legal presumption independent of any proof concerning a defendant's mental state. *Id.* In contrast, in order to submit the punitive damage instruction in a civil malicious prosecution case, the plaintiff must show legal malice, which requires proving a culpable mental state. *Id.* More specifically, for the punitive damage instruction to be submitted, the plaintiff must adduce evidence from which the jury could infer and find that defendant acted with an improper or wrongful motive—that is, *malo animo. Pernoud v.*

*Martin,* 891 S.W.2d 528, 535 (Mo.App.1995). The instruction as submitted to the jurors was consistent with this standard.

Looking at the record, there is sufficient evidence that Francois pursued the lawsuit against the Fusts because of an improper motive. The evidence suggests the suit was instituted to get back at the Fusts for their public campaign efforts against the proposed development and their interference with the building of the fence. There is also evidence of Francois' desire to purchase the Fusts' property to facilitate the completion of the project and his initiation of the suit was a way to pressure them to sell. Upon their refusal to sell, a letter was sent at Francois' direction warning of possible environmental problems and threatening liability. When the campaigning continued, Francois filed suit. There were no efforts on the part of Francois to resolve the dispute amicably. Rather, the jury could infer that Francois used the courts as a weapon to get the Fusts to conform. When the Fusts denied the settlement proposal, the suit was expanded to add Rita Fust. Upon the involuntary dismissal of the suit, another letter was written by Francois to the Fusts ordering them to stop their activities and threatening another lawsuit if they did not. This evidence taken in totality supports a finding of legal malice.

 Second, Francois argues that the amounts of the punitive award are excessive and exceed the punitive damage awards allowed in other cases. Awarding punitive damages is peculiarly committed to the jury and trial court's discretion, and the appellate court will interfere only in extreme cases. *Young,* 540 S.W.2d at 898. An award amounts to an abuse of discretion when it is so out of all proper proportion to the evidence as to reveal improper motives or a clear absence of the honest exercise of judgment. *Id.* at 898. Although there is no fixed relation between actual and punitive damages, nor a fixed standard for their measurement, punitive damages must in general bear some relation to the injuries and the manner of their infliction. *Id.* at 897.

 Considering the amount of compensatory damages awarded, the punitive damages do not appear excessive. The rec-

ord supports the inference that Francois used the legal system to chill the Fusts' campaign activities, to intimidate them to accept his proposed development, and to pressure the Fusts into selling him the back portion of their yard, an acquisition which would save Francois a substantial amount of money. We do not find the punitive damage award so unreasonable as to require our intervention. The individual totals of the punitive damage award for Carl and Rita Fust both equate to one and one-half times the amount of each's compensatory damages. We are also mindful of the purpose of punitive damages—to punish and deter. *See Burnett v. Griffith,* 769 S.W.2d 780, 787 (Mo. banc 1989) (citing Restatement (Second) of Torts § 908 (1977)). To fulfill that purpose, each case must be assessed on its own merits, without regard to specific awards in other cases. The fact a particular punitive award exceeds the amount of other cases is not sufficient proof that the award is excessive or the product of passion or prejudice. After evaluating the circumstances of this unique case the jury and trial judge could have found a substantial amount of punitive damages was justified. Point six denied.

The judgment is affirmed.

GERALD M. SMITH, P.J., and GARY M. GAERTNER, J., concur.